UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ALISA ANNE SCOUTEN,

                              Plaintiff,

        v.                                          **DECISION AND ORDER**
                                                    15-CV-76S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

        1.      Plaintiff Alisa Anne Scouten challenges an Administrative Law Judge's

("ALJ") decision dated June 19, 2013, wherein the ALJ determined that Plaintiff was not

disabled under the Social Security Act (the "Act").   Plaintiff now contends that this

determination is not based upon substantial evidence, and remand is warranted.

        2.      Plaintiff filed an application for disability insurance benefits under Title II of

the Act on October 20, 2011, alleging a disability beginning on February 19, 2011.  The

claim was initially denied on January 9, 2012.  Plaintiff thereafter requested a hearing

before an ALJ, and, on April 1, 2013, Plaintiff appeared and testified in Buffalo, NY.  The

ALJ subsequently found on June 19, 2013 that Plaintiff was not disabled within the

meaning of the Social Security Act.   Plaintiff filed an administrative appeal and the

Appeals Council denied Plaintiff's request for review on November 28, 2014, rendering

the ALJ's determination the final decision of the Commissioner.  Plaintiff filed the instant

action on January 26, 2015.

        3.      Plaintiff and the Commissioner each filed a Motion for Judgment on the

Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos.

7, 14).  Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.  <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988).

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir. 1990).   Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  <u>See</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983); <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (internal quotation marks and citation omitted).   Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  <u>See</u> <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

5.      To determine whether the ALJ's findings are supported by substantial evidence, "a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  <u>Williams on Behalf of Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ

from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y.

1992).   In other words, this Court must afford the Commissioner's determination

considerable deference, and will not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de*

*novo* review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir.

1984).

      6.     The United States Supreme Court recognized the validity of this analysis

in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119

(1987), and it remains the proper approach for analyzing whether a claimant is disabled.

      7.     This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work activities.
> If the claimant suffers such an impairment, the third inquiry is whether,
> based solely on medical evidence, the claimant has an impairment which
> is listed in Appendix 1 of the regulations.  If the claimant has such an
> impairment, the [Commissioner] will consider him disabled without
> considering vocational factors such as age, education, and work
> experience; the [Commissioner] presumes that a claimant who is afflicted
> with a "listed" impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has the
> residual functional capacity to perform his past work.  Finally, if the
> claimant is unable to perform his past work, the [Commissioner] then
> determines whether there is other work which the claimant could perform.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); <u>see also</u> <u>Rosa v.</u>

<u>Callahan</u>, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

      8.     Although the claimant has the burden of proof as to the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  <u>See</u> <u>Bowen</u>, 482 U.S.

at 146 n.5; <u>Ferraris v. Heckler</u>, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this

inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ determined that Plaintiff last met the insured status requirements of the Act on June 30, 2012.  (R. 45.)[1]  He then made the following findings with regard to the five-step process set forth above:  (1) Plaintiff had not engaged in substantial gainful activity since February 19, 2011, the alleged date on which she became disabled (id.); (2) Plaintiff's severe impairments include vertebrogenic disorders and status-post whiplash (id.); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a recognized disabling impairment under the regulations (R. 46-47); (4) Plaintiff had the residual functional capacity ("RFC") to perform a full range of light work except she must be able to change position from sitting to standing every half hour, avoid extreme cold temperatures, never climb ropes, ladders, or scaffolds, and never climb, balance, stoop, kneel, crouch, or crawl, and that this RFC precluded Plaintiff from performing any past relevant work (R. 47-51); and (5) considering the Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (R. 51-53).

10.      Plaintiff's primary complaint is pain in her back and shoulder.  (R. 367.) Plaintiff was involved in an automobile accident, in which she states that she suffered

---

[1] Citations to the underlying administrative record are designated as "R."

"side to side" whiplash resulting in torn muscles and herniated discs in her lumbar spine. (R. 63.)  She suffered from shooting pain and tingling on her right side, as well as lower back pain which radiated down into her right lower extremities.  (R. 67-68.)  Plaintiff has stated that being in one position (i.e. sitting, standing, or lying down) for "any length of time" exacerbates her pain.  (R. 69.)  Plaintiff has also stated that she suffers from anxiety since the accident, which has led to difficulty sleeping and panic attacks. (R. 66-67.)  Plaintiff advances three challenges to the ALJ's decision.

11.    First, Plaintiff contends that the ALJ failed to properly incorporate the medical opinion of Dr. Donna Miller, a consulting examiner, into Plaintiff's RFC.   An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996)).  Here, after considering the entire record, the ALJ determined that Plaintiff had the RFC to perform light work[2] with certain limitations.  (R. 47.)  The RFC was based, in part, on Dr. Miller's assessment that Plaintiff had moderate limitations for heavy lifting, bending, and carrying, as well as mild limitations for repetitive reaching, pushing and pulling.  (See R. 50 (citing Dr. Miller's opinion at R. 370).)  Plaintiff asserts that the ALJ's incorporation of Dr. Miller's opinion was improper because:  (1) Dr. Miller's use of "moderate" and "mild" to describe Plaintiff's limitations rendered the opinion too vague to be relied upon; (2) Dr. Miller's assessment of a "moderate limitation" on heavy lifting is inconsistent with the ALJ's RFC of light work; and (3) the ALJ improperly interpreted Dr. Miller's silence as to

---

[2] Light work is defined in the regulations as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  SSR 83-10, 1983 WL 31251, at *5 (S.S.A.1983).

limitations on sitting to mean that Plaintiff has no limitations on sitting.  For the following reasons, none of these arguments constitute grounds for remand.

In this case, Dr. Miller's opinion was not impermissibly vague.  Plaintiff cites to Curry v. Apfel, in which the Second Circuit case held that the opinion from a consultative examiner that a claimant has "mild" or "moderate" limitations, "*without additional information*," is "so vague as to render [the opinion] useless[.]"  209 F.3d 117, 123 (2d Cir. 2000), *superseded by statute on other grounds*, as recognized in Douglass v. Astrue, No. 11-3325-cv, 2012 WL 4094881, at *1 (2d Cir. Sept. 19, 2012) (summary order) (emphasis added.).  However, unlike the opinion in Curry, Dr. Miller's opinion is "generally supported by [her] individual examination[ ] of Plaintiff, and . . . also consistent with the other evidence in the medical record."  See Henry v. Colvin, No. 14-CV-0838 (MAT), 2015 WL 8074299, at *6 (W.D.N.Y. Dec. 4, 2015).  In her examination notes, Dr. Miller noted that although Plaintiff had some difficulty walking on her heels and toes, she was not in any distress and her gait and stance were normal, she did not use any assistive devices, did not need help changing for the examination or getting on or off the examination table, and rose from a chair without difficulty.  (R. 368.)  Further, although Plaintiff had reduced movement in her cervical and lumbar spine, she had no abnormalities in her thoracic spine and her straight leg raising test was negative bilaterally.  (R. 369.)  She also had full range of motion in her elbows, wrists, left shoulder, hips and ankles, intact hand and finger dexterity and full grip strength bilaterally, normal deep tendon reflexes, no sensory deficits in her upper and lower extremities, and no muscle atrophy, significant varicosities, or trophic changes.  (R. 370.)  "Where, as here, the opinion[ ] of the consultative examiner[ ] [was] based on [a]

thorough medical examination[ ] and [was] not inconsistent with the primary treatment records or the remainder of the record evidence, the reasoning supporting <u>Curry</u> is inapplicable." <u>Henry</u>, 2015 WL 8074299, at *6.  There was therefore no error in the ALJ's reliance on Dr. Miller's opinion.

Nor was there any inconsistency between the ALJ's RFC of light work and Dr. Miller's opinion as to moderate limitations on lifting.  Indeed, moderate limitations—such as those assessed by Dr. Miller—have often been found to be consistent with an RFC for a full range of light work.  <u>See, e.g.</u>, <u>Harris v. Comm'r of Soc. Sec.</u>, No. 09-CV-1112 NAM/VEB, 2011 WL 3652286, at *5 (N.D.N.Y. July 27, 2011) report and recommendation adopted, No. 1:09-CV-1112, 2011 WL 3652201 (N.D.N.Y. Aug. 17, 2011) (finding "slight to moderate limitations in activities that require lifting, carrying, and reaching . . . consistent with the ALJ's conclusion that Plaintiff could perform light work"); <u>Vargas v. Astrue</u>, No. 10 CIV. 6306 PKC, 2011 WL 2946371, at *12 (S.D.N.Y. July 20, 2011) (finding "moderate limitations for lifting, carrying, handling objects, and climbing stairs" consistent with RFC for full range of light work); <u>see also</u> <u>Harrington v. Colvin</u>, No. 14-CV-6044P, 2015 WL 790756, at *14 (W.D.N.Y. Feb. 25, 2015) (gathering cases).  Furthermore, the ALJ discussed and provided "reasons tending to support the finding that, despite the moderate limitations . . . . [Plaintiff] could still perform light work." <u>See</u> <u>Carroll v. Colvin</u>, No. 13-CV-456S, 2014 WL 2945797, at *4 (W.D.N.Y. June 30, 2014) (noting that, although RFC for light work might be consistent with moderate physical limitations, ALJ was required to "discuss and provide reasons tending to support the finding").  The ALJ cites to the full notes from Dr. Miller discussed above, in which Dr. Miller noted that Plaintiff "exhibited difficulty heel- and toe-walking, . . .

squatted 25% of normal . . . [,] displayed a normal gait and stance, used no assistive devices, alighted to and from the examination table independently, and rose from her chair without difficulty."   (R. 50 (citing Dr. Miller's opinion).)   In addition, the ALJ addressed treatment notes and opinions from each of the medical sources, reviewed the diagnostic imaging and found "claimant's cervical impairment to be, at most, mild," with "normal" shoulder x-rays, and that the "lumbar spine diagnostic imaging showed evidence of degenerative disc disease."  (R. 51.)  In this case, as the ALJ thoroughly explained, an RFC for light work is consistent with Dr. Miller's moderate limitation on lifting.

Finally, the ALJ did not err in finding that Plaintiff could sit half an hour before changing positions, even though Dr. Miller did not address this point in her medical opinion.   During the hearing, Plaintiff acknowledged that she is able to sit for approximately half an hour before changing positions. (R. 72.)  There is no error where, as here, an ALJ bases his RFC on Plaintiff's own testimony.  See Rossow v. Colvin, No. 14-CV-526S, 2015 WL 5089058, at *5 (W.D.N.Y. Aug. 27, 2015) (finding no reversible error where "the ALJ also expressly relied to an extent on Plaintiff's own testimony regarding his abilities and limitations"); see also Mulrain v. Comm'r of Soc. Sec., 431 F. App'x 38, 39 (2d Cir. 2011) ("The medical evidence in the record concerning [plaintiff]'s condition and his own testimony provide substantial evidence to support the administrative law judge's . . . determination that [plaintiff] was not disabled under the Act.").

The ALJ thoroughly discussed and considered Plaintiff's treatment history, her statements concerning daily activities, as well as the medical opinions in the record

regarding Plaintiff's limitations, and incorporated them into the RFC.   (R. 47-51.)

Accordingly, the Court finds that the RFC is consistent with Dr. Miller's opinion and the

record as a whole.

12.   Second, Plaintiff contends that the ALJ failed to properly incorporate the

opinion of Dr. J. Echevarria, a non-examining reviewer.   Dr. Echevarria reviewed

Plaintiff's treatments records and opined that she had moderate limitations in a number

of areas, ultimately concluding that she "would be able to perform simple, low contact

job tasks in a routine work setting."   (R. 372-74.)   In his RFC assessment, the ALJ

stated that he "largely agreed" with Dr. Echevarria's opinion, and that it "seems

supported by the weight of the psychological evidence."   (R. 50.)   The ALJ did not find

that Plaintiff had any severe mental impairments, nor did he limit Plaintiff to "simple, low

contact" work, and the Plaintiff claims that the ALJ therefore erred in not providing

reasons for his dismissal of Dr. Echevarria's opinion.

The ALJ is required to evaluate and weigh the medical findings of non-treating

physicians.   See 20 C.F.R. § 416.927(c) ("[W]e will evaluate every medical opinion we

receive. . . ."); 20 C.F.R. § 416.927(e)(2)(ii) ("Unless a treating source's opinion is given

controlling weight, the administrative law judge must explain in the decision the weight

given to the opinions of a State agency medical or psychological consultant . . . , as the

administrative law judge must do for any opinions from treating sources, nontreating

sources, and other nonexamining sources who do not work for us.").   However, the

Second Circuit has explained that "'[w]hen . . . the evidence of record permits us to

glean the rationale of an ALJ's decision, we do not require that he have mentioned

every item of testimony presented to him or have explained why he considered

9

particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'" Lowry v. Astrue, 474 F. App'x 801, 805 (2d Cir. 2012) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)); see Christina v. Colvin, 594 F. App'x 32, 33-34 (2d Cir. 2015) (summary order) (rejecting the plaintiff's argument that the ALJ committed reversible error by dismissing a portion of an opinion by a consultative examiner and failing to discuss portions of the state-agency psychologist's opinion in light of the fact that the ALJ's determination was consistent with both consultative examiner's report and the state agency psychologist's opinion).

Here, the ALJ determined that Plaintiff's anxiety and depression did not constitute medically determinable impairments that were severe.  (R. 45-46.)  The ALJ concluded that Plaintiff's anxiety and depression did not meet this threshold in light of evidence demonstrating that Plaintiff's mental impairment did not cause more than a "minimal limitation" to her ability to perform basic mental work activities, including evidence, which the ALJ specifically cited to and referenced, demonstrating that:  (1) Plaintiff testified and told the psychological examiner that "her main blocks to performing activities of daily living are physical, not mental," and that Plaintiff is not currently receiving psychological treatment; (2) Plaintiff "exerted control over her social interactions" and remarried during the relevant period, which reflects a "capacity to socialize"; (3) Plaintiff demonstrated "no mental deficit" during her consultative examination, and "reported that her main hobby was reading psychological thrillers and murder mysteries"; (4) Plaintiff has never experienced an episode of decompensation. (R. 45-46 (citing treatment records from Dr. Hill and Plaintiff's testimony).)  The ALJ's detailed explanation of, and citation to, the evidentiary record as it relates to his

determination regarding the severity of Plaintiff's mental impairment, permits this Court to glean the rationale of the determination.  Under these circumstances, the ALJ was not required to specifically distinguish Dr. Echevarria's opinion.[3]  See Lowry, 474 F. App'x at 805 (finding that the ALJ did not err by failing to "meaningfully explain" reasons for not crediting certain evidence where the rationale for his decision was evident from review of the record, and where there was substantial evidence supporting the ALJ's decision); LaRock ex rel. M.K.v. Astrue, No. 10-CV-1019, 2011 WL 1882292, at *6 (N.D.N.Y. Apr. 29, 2011) (noting that "there is no obligation for the ALJ to discuss every piece of evidence contained in the record," and finding that because the ALJ "engaged in a thorough review of [the plaintiff's] medical and educational history," he did not err by failing to specifically refer to, inter alia, various emergency room visits, plaintiff's separate diagnosis of a separate anxiety disorder, and a specific opinion from the plaintiff's therapist), report and recommendation adopted, 2011 WL 1883045 (N.D.N.Y. May 17, 2011).

Moreover, contrary to Plaintiff's argument, Dr. Echevarria's findings are not inconsistent with the ALJ's disability determination.  Dr. Echevarria did not conclude, as Plaintiff contends, that Plaintiff "needed to be limited to a simple, repetitive, low contact work environment." (Pl. Mem. at 25.)  Rather, Dr. Echevarria noted, as part of his

---

[3] Furthermore, the ALJ had strong grounds for affording greater weight to the opinions of those medical sources who had a treating relationship with, or at least examined, the Plaintiff.  See Vargas v. Sullivan, 898 F.2d 293, 295-96 (2d Cir. 1990) ("The general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability.") (internal citations and quotations omitted); Social Security Ruling 06-03p, 2006 WL 2329939, at *4 (S.S.A. Aug. 9, 2006) (in weighing a medical source opinion, the ALJ should consider "[h]ow long the source has known and how frequently the source has seen the individual").  This is especially so when weighing the opinions of psychiatric examiners.  See Velazquez v. Barnhart, 518 F. Supp. 2d 520, 524 (W.D.N.Y. 2007) ("A psychiatric opinion based on a face-to-face interview with the patient is more reliable than an opinion based on a review of a cold, medical record . . . ."); O'Connor v. Astrue, No. 07-CV-141, 2009 WL 3273887, at *6 (W.D.N.Y. Oct. 9, 2009) ("Particularly where psychiatric status is at issue, the opinions of non-examining physicians should be accorded less weight than those of treating physicians.").

narrative RFC assessment, that Plaintiff "would be able to perform simple, low contact job tasks in a routine work setting," and provided no indication that Plaintiff was limited in any respect. (R. 374.)  Dr. Echevarria's observation that Plaintiff "would be able to perform simple, low contact job tasks" as well as his other conclusions that Plaintiff is not "markedly limited" in any area, are consistent with the ALJ's conclusion that Plaintiff's anxiety and depression "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were, therefore, non-severe."[4]  (R. 45, 372-74.)  "Thus, to the extent that Plaintiff asserts that the ALJ's conclusion is contradicted by [Dr. Echevarria]'s findings, the Court rejects this mischaracterization of the record."  See Jermyn v. Colvin, No. 13-CV-5093 MKB, 2015 WL 1298997, at *16 (E.D.N.Y. Mar. 23, 2015) (non-examining reviewer's assessment that the plaintiff "can perform simple tasks independently" was not a limitation and therefore consistent with ALJ's finding of no severe mental impairment).

If there was any error in failing to explicitly distinguish Dr. Echevarria's opinion, such error was harmless.  See LaRock, 2011 WL 1882292, at *10 ("[E]ven if [the non-examining consultant's] opinion of a marked limitation in this domain had been accepted, it would not have resulted in a finding of disability" and so "the ALJ's failure to offer a specific explanation as to why this particular finding  . . . was rejected, at most amounts to harmless error.") (citing Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998); Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to

---

[4]  The record suggests that Dr. Echevarria's findings were based on medical reports from Plaintiff's file, including the assessment notes from Dr. Hill, whose records the ALJ explicitly relied on in his decision as to whether Plaintiff's anxiety and depression are severe impairments.  (See R. 374 (narrative from Dr. Echevarria indicating that Plaintiff's "recent ce [consulting examiner] mse [mental status examination] wnl [within normal limits].").)

require" remand.)).   Accordingly, because the ALJ's RFC determination is supported by substantial evidence in the record, it will not be disturbed.

13.      Finally, Plaintiff contends that the ALJ failed to properly develop the record and seek out a treating source opinion.   "[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal."   Rosa, 168 F.3d at 79 (internal alterations and quotation marks omitted).   The ALJ's duty to develop the record reflects "the essentially non-adversarial nature of a benefits proceeding."   Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (internal quotation marks omitted); see also Sims v. Apfel, 530 U.S. 103, 111, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000) ("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits. . . .").   However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."   Rosa, 168 F.3d at 79 n. 5 (quoting Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)).

Here, the ALJ based his findings on opinions from a consultative doctor who personally examined Plaintiff, as well as Plaintiff's complete medical history and treatment notes.   "Although the Social Security regulations express a clear preference for evidence from the claimant's own treating physicians over the opinion rendered by a consultative examiner, this Court does not always treat the absence of a medical source statement from claimant's treating physicians as fatal to the ALJ's determination." Swiantek v. Comm'r of Soc. Sec., 588 F. App'x 82, 84 (2d Cir. 2015) (citing 20 C.F.R. § 416.912; Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 33-34 (2d Cir. 2013)).   There

were no "obvious gaps" in Plaintiff's medical record, nor any significant inconsistencies between Plaintiff's treating physician and the ALJ's RFC, and therefore no requirement to remand solely on the ground that the ALJ failed to obtain a formal opinion from one of Plaintiff's treating physicians.  See Rosa, 168 F.3d at 79 n. 5.

14.     Having considered Plaintiff's challenges, this Court is satisfied that the ALJ committed no reversible error, and that his decision is based on substantial evidence.  Defendant's Motion for Judgment on the Pleadings is therefore granted and Plaintiff's motion seeking the same relief is denied.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is DENIED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED;

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:  May 10, 2016
         Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge